**Opinion issued February 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01034-CV

————————————

## NEW YORK PARTY SHUTTLE, LLC, Appellant

## V.

## JOHN BILELLO, Appellee

———————————————————————————————————————

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-74793**

———————————————————————————————————————

## O P I N I O N

Appellant New York Party Shuttle, LLC (NYPS) appeals a judgment entered

against it in favor of appellee John Bilello.  Bilello sued NYPS for breaching their

October 2006 settlement agreement.  After a bench trial, the trial court found that

NYPS breached the settlement agreement and awarded Bilello $39,900.04, plus prejudgment interest. In four points of error, NYPS contends that the judgment should be reversed because (1) it conclusively established the affirmative defenses of mutual mistake, novation, and repudiation, and (2) the trial court erred in denying NYPS's motion for a continuance. Bilello raises one cross-point in which he contends the trial court erred in denying his request for attorney's fees. Finding no reversible error, we affirm.

## Background

In 2004, Bilello and Thomas Schmidt started Jersey Shuttle, LLC. The business plan for the company was to carry passengers from Manhattan to Atlantic City. Shortly thereafter, Bilello and Schmidt formed a new company, NYPS, which provided sightseeing tours in New York City. In August 2005, NYPS and Bilello entered into a separation agreement and Bilello left NYPS to set up a similar business in San Francisco. After the parties entered into the separation agreement, NYPS sued Bilello in Harris County, alleging, among other things, that Bilello misrepresented the financial condition of NYPS while negotiating the separation agreement. Bilello then sued Schmidt individually, Schmidt's law firm, NYPS, and other entities, in New Jersey for, among other things, breach of fiduciary duty and legal malpractice. The parties attended mediation and ultimately entered into a settlement agreement and release of all claims on October

2

26, 2006. This settlement agreement settled and released all claims between Bilello, San Francisco Comprehensive Tours, LLC, and the Tour Guide Training Center (Bilello parties) and NYPS, Jersey Shuttle, LLC, C. Thomas Schmidt, Schmidt & Hoffer, LLP, Creativerse Internet Systems, LLC, and Washington DC Party Shuttle, LLC (NYPS parties).

Pursuant to the terms of the settlement agreement, Bilello was to receive $350,000 from NYPS over a three year period "on behalf of the NYPS Parties . . . in full satisfaction of all claims against the NYPS Parties." The parties also agreed to mutually release all claims or causes of action against the other side. Under the settlement agreement, Bilello also forfeited his 1,650-unit membership interests in NYPS and his 650-unit membership interest in Jersey Shuttle, LLC, as well as all warrants, bonuses, and other undetermined benefits. The settlement agreement contained mutual noncompete provisions and stated that it could not be modified or amended except by written instrument signed by all of the parties thereto.

NYPS made timely payments to Bilello under the terms of the settlement agreement until August 2008. That month, NYPS was scheduled to make a $20,000 payment. However, NYPS only made a $7,500 payment and failed to pay the remaining $12,500. Bilello sent a default notice to NYPS regarding the overdue $12,500. Bilello stated that, in accordance with the terms of the settlement agreement, he was entitled to pursue remedies and start competing

3

businesses in the restricted areas, but that he would prefer to receive the payment due. NYPS responded that it would be able to pay the $12,500, but it wanted Bilello to confirm that there would be no material breach and that all other provisions of the settlement agreement remain intact if the payment were made on or before October 13, 2008. NYPS did not receive a response to this communication, so it sent Bilello another email stating NYPS was prepared to wire the $12,500 and to continue paying the balance of the amounts agreed to in the settlement agreement "immediately upon written agreement that there was no material breach of our agreement and that all of the provisions of that agreement remain in effect." In response, Bilello stated that he had no position on NYPS's inquiry as to whether there was a material breach, and he suggested that NYPS make all the required payments. NYPS never paid the $12,500 and failed to make the majority of the remaining payments due under the settlement agreement.

In the next several weeks, NYPS and Bilello discussed amending the terms of the settlement agreement. The two main purposes of the contemplated amendment were to set forth new terms governing the payment of the remaining balance owed to Bilello under the settlement agreement and to extend the noncompete agreement until 2012. The other terms of the settlement agreement were to remain the same. While the parties seemingly reached agreement on the amendment in principle, their email communications reflect that they intended the

4

amendment to become effective upon the execution of a new written agreement reflecting the new terms. However, neither party ever executed a writing modifying the terms of the settlement agreement.

Bilello ultimately sued NYPS for breach of contract based on NYPS's failure to make the required payments under the settlement agreement. It was undisputed that, at the time Bilello's lawsuit was filed, NYPS had failed to pay $39,900.04 due under the settlement agreement. NYPS answered and raised several affirmative defenses, including mutual mistake, novation, and repudiation.

Following a one-day bench trial, the trial court rejected NYPS's affirmative defenses, and found that NYPS breached the settlement agreement. It awarded Bilello damages in the amount of $39,900.04 plus prejudgment interest. NYPS appeals.

## Discussion

### A. NYPS's Affirmative Defenses

In its first three issues, NYPS argues that it conclusively proved its affirmative defenses of mutual mistake, novation, and repudiation. We construe these issues as challenges to the legal sufficiency of the evidence to support the trial court's adverse findings on those affirmative defenses.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.

5

1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269–70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review a trial court's findings of fact under the same legal sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Catalina*, 881 S.W.3d at 297; *Nguyen*, 317 S.W.3d at 270.

"A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue." *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 448 (Tex. App.—Dallas 2011, no pet.). We consider the legal sufficiency of the evidence in the light most favorable to the prevailing party, according every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 500–01 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005)). If no evidence supports the adverse finding, we examine the entire record to determine if the

contrary position is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The issue will be sustained only if the contrary proposition is conclusively established. *Id.*

### 1. Mutual Mistake

In its first point of error, NYPS argues that the evidence at trial conclusively established that it agreed to pay Bilello $350,000 under the settlement agreement based on the parties' mutually mistaken belief that $350,000 was the reasonable value of Bilello's shares in NYPS. According to NYPS, because of later-discovered errors made in the computation of workers' compensation costs, payroll and local taxes, and maintenance costs, the value of the company—and thus, the value of Bilello's interest in it—was significantly less than the parties thought at the time they entered into the settlement agreement.

In response, Bilello argues that NYPS failed to show that the parties' true agreement was incorrectly reflected in the settlement agreement or that they shared the same mistaken belief as to a material fact. Bilello contends that, at best, the evidence demonstrated that NYPS failed to accurately appraise its financial condition at the time the parties entered into the settlement agreement.

The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-on exchange. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth

7

2008, pet. dism'd). A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written agreement does not accurately reflect that intention due to a mutual mistake. *See Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.); *City of The Colony*, 272 S.W.3d at 735. When mutual mistake is alleged, the party seeking relief must show what the parties' true agreement was and that the instrument incorrectly reflects that agreement because of a mutual mistake. *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 213 (Tex. App.—Houston [1st Dist.] 2004 pet. denied). Under the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be voided. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Id.* A unilateral mistake by one party, combined with knowledge of that mistake by the other party, is equivalent to mutual mistake. *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988). But, "[a] mistake by only one party to an agreement, not known or induced by acts of the other party[,] will not constitute grounds for relief." *Smith-Gilbard*, 332 S.W.3d at 713–14 (quoting *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1974)). Mutual mistake should not be available to avoid the results of an unhappy

8

bargain. *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990). Parties should be able to rely on the finality of freely bargained agreements. *Id*.

Here, the record supports the trial court's finding that NYPS failed to conclusively establish a mutual mistake. The record does not conclusively show that the $350,000 amount agreed to in the settlement agreement was the consideration for Bilello's shares in NYPS and nothing more. Despite NYPS's contention to the contrary, there was evidence indicating the payment of $350,000 was consideration for not only the value of Bilello's interest in NYPS, but also for Bilello's interest in Jersey Shuttle and his agreement to release his claims against all of the NYPS parties. Indeed, the payments to Bilello were made on behalf of all of the NYPS parties, not just NYPS.

Furthermore, NYPS has failed to establish the existence of a *mutual* mistake. Bilello left NYPS in October 2005, one year before the parties signed the settlement agreement. During that year, Bilello was working in San Francisco and did not have access to the financial records of NYPS. At trial, Bilello testified that he had no independent knowledge of the financial condition of NYPS after he left the company and that he and his attorney relied on Schmidt's statements on that topic during the settlement negotiations, while Schmidt was in charge of the company and was knowledgeable about NYPS's financial condition. This evidence, at best, supports a conclusion that Schmidt mistakenly evaluated the

financial condition of NYPS in deciding how much Bilello's interest in NYPS was worth. *See Walden*, 97 S.W.3d at 326 (mutual mistake requires misunderstanding of same material fact by *both parties*). Schmidt made no showing that adequate financial information was not made available to him. And there was no evidence introduced that Bilello was aware Schmidt had made a mistake in evaluating the value of Bilello's interest in NYPS. *See Atlantic Lloyds*, 137 S.W.3d at 213 (holding record did not support finding of mutual mistake or unilateral mistake because there was no evidence that plaintiffs made mistake as to terms of settlement agreement and that defendants were aware of this mistake).

We conclude there is more than a scintilla of evidence to support the trial court's finding that NYPS failed to prove its affirmative defense of mutual mistake. *See Hildebrandt*, 265 S.W.33d at 27. Therefore, we overrule NYPS's first point of error.

### 2. Novation

In its second point of error, NYPS argues that the evidence conclusively demonstrated the formation of a new contract modifying the terms of the settlement agreement. According to NYPS, once this valid new agreement was formed, the settlement agreement was extinguished and Bilello was no longer permitted to sue to enforce it. Bilello responds that the trial court did not err by rejecting NYPS's novation defense because the evidence clearly demonstrates both

parties intended that the new agreement would be effective only after it was signed, and it never was signed.

NYPS contends the novation was accomplished in an email exchange between Schmidt and Bilello. In it, Schmidt and Bilello discussed entering into a new agreement to modify the terms under which NYPS would pay the balance under the settlement agreement and to extend the noncompete agreement until 2012. They also discussed leaving the other terms of the original settlement agreement intact. After agreeing to these terms in principle via email, Schmidt forwarded the proposed new written agreement to Bilello for review. Bilello reviewed it and asked Schmidt to fix some typos and resend it so the parties could execute the final version contemporaneously and exchange completed signed versions of the agreement by fax. Bilello's email read: "Okay, everything looks good. Go ahead and fix those typos and then I propose we sign and fax the same time—tomorrow 12pm PT? If not, what day/time?" The parties apparently did not execute the new agreement as Bilello proposed. Approximately a week later, Schmidt emailed Bilello, "I need that document signed asap if we're going to make a wire on the 10th."

Novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Where a

11

novation occurs, only the new agreement may be enforced. *Id.* To establish a novation, the party raising the defense must prove: (1) the existence of a previous, valid obligation; (2) a mutual agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *RM Crowe Prop.*, 348 S.W.3d at 448 (citing *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999)).

"Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). Whether a written contract is signed is relevant to a determination of whether the contract is binding on the parties. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, no pet.). Parties may provide that the signature of each party is a prerequisite to a binding written contract. *Id.* (citing ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 2.10, at 165 (Joseph M. Perillo rev. 1993)). Where parties to a written contract intend that it shall not be binding until it is signed by the parties, the signatures of both parties are required to give effect to the contract. *See Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418–19 (Tex. 1955); *Birchminster Resources v. Corpus Christi Management Co.*, 517 S.W.2d 608, 611 (Tex. App.—Corpus Christi 1974, writ dism'd). Therefore, "the question of

whether a written contract must be signed to be binding is a question of the parties' intent." *In re Bunzl*, 155 S.W.3d at 209.

In *Simmons*, the Texas Supreme Court considered whether the parties were bound by a written instrument that was signed by only one party. There, a general contractor and a subcontractor orally discussed and agreed to the essential terms of a subcontract and, immediately following this discussion, the general contractor reduced the agreement to writing. *Simmons*, 286 S.W.2d at 416. The written instrument contained a signature block and was delivered to the subcontractor with instructions to sign the instrument, obtain a bond, and return the signed instrument, along with the bond, so the general contractor could then sign it. *Id.* After the subcontractor followed these instructions, the general contractor returned the bond and the instrument unsigned to the subcontractor, "stating that it would be impossible for [the general contractor] to enter into the contractual agreement." *Id.* The subcontractor sued the general contractor and the jury determined that the parties intended for the written instrument to become binding regardless of whether it was signed by both parties. *Id.*

Noting that the written instrument provided places for the signatures of both parties, required the signatures of both parties in connection with the furnishing of a performance bond, and was delivered to the subcontractor with the specific instructions to sign it, obtain the bond, and return it to the general contractor for

13

signature, the Supreme Court concluded that the general contractor intended that the instrument be signed by both parties as a condition precedent to his assent to the contract. *Id.* at 418–19. The Court found there was nothing in the general contractor's actions that could "reasonably give[] rise to the inference that he intended to assent to the instrument in the absence of the signatures of the parties or that he intended to waive signing as a condition of such assent." *Id.* at 419; *see also In re Bunzl*, 155 S.W.3d at 211–12 (relying on blank signature blocks in arbitration agreement as well as provision requiring modifications or amendments to agreement to be signed by all parties as evidence of parties' intent, court held that employer did not establish existence of valid arbitration agreement because parties did not intend to be bound until both parties signed agreement).

Even assuming that NYPS conclusively established some elements of novation, NYPS did not conclusively prove the validity of the new contract because the evidence shows the parties intended for it to become binding upon signing, but neither party ever signed. NYPS relies heavily on Bilello's email to Schmidt, in which Bilello noted his assent to the new agreement by typing the word "[d]one," in response to Schmidt's proposal. According to NYPS, this is enough to conclusively establish novation. But this overlooks the evidence that both parties viewed signatures as a condition precedent to a new binding agreement: (1) the email exchange indicating the parties planned to sign

14

contemporaneously and exchange executed versions of the agreement; and (2) Schmidt's testimony that he was reminding Bilello to sign the document because he needed to know if they were going forward with the agreement or not. With respect to the latter, Schmidt testified that "in light of [Bilello's] prior behavior I wanted to make sure I had that confirmation before I wired the money." Furthermore, the settlement agreement stated that it could not be "modified or amended except by an instrument in writing *signed by all of the Parties* hereto." This evidence demonstrates that both parties intended signatures to be a condition precedent to a valid, new agreement. *See Simmons*, 286 S.W.2d at 418–19; *In re Bunzl*, 155 S.W.3d at 211–12. Therefore, we conclude that the evidence is legally sufficient to support the trial court's finding that signatures were required before a new agreement was formed and, thus, NYPS failed to conclusively establish its affirmative defense of novation. *See RM Crowe Prop.*, 348 S.W.3d at 448–49.

We overrule NYPS's second point of error.

### 3.    Repudiation

In its third point of error, NYPS argues that it conclusively established its affirmative defense of repudiation by proving Bilello refused to provide reasonable assurance to NYPS that the settlement agreement was still in effect after NYPS failed to make the full August 2008 payment. NYPS contends that Bilello's statement that he was entitled to compete and accelerate the remaining payments

15

excused NYPS from further performance of its obligations under the settlement agreement unless and until Bilello provided reasonable assurances that the agreement was still binding on Bilello.[1]  In response, Bilello maintains he never repudiated the agreement, and that it was NYPS that committed the first breach by failing to make the full August 2008 payment.

"[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."  *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). If the non-breaching party continues to insist on performance by the party in default, the previous breach by the breaching party is not an excuse for nonperformance by the non-breaching party and the contract continues in full force.  *Id.*  The non-breaching party, therefore, must choose between continuing performance and ceasing performance.  *Id.*

Repudiation or anticipatory breach is an unconditional refusal to perform the contract in the future, which can be expressed either before performance is due or

---

[1]  Citing no authority, NYPS also argues that its failure to pay the entire $20,000 August 2008 payment was not a material breach of the settlement agreement. NYPS did not assert this argument in the trial court and did not adequately brief this issue on appeal.  Nevertheless, we note that the settlement agreement defined default as the "default or delinquency of any payment obligation set forth on Exhibit A to this Agreement that is not cured within 15 days of written notice provided by Bilello."  The failure to make a complete payment when due under a contract may constitute a material breach.  *See, e.g.*, *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.)

16

after partial performance. *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). "To constitute a repudiation or anticipatory breach, the party to the contract must have absolutely repudiated the contract without just cause." *Id.* Because NYPS asserted repudiation as an affirmative defense, NYPS had the burden of proving that Bilello unconditionally refused to perform the contract. *See El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Here, the trial court found that NYPS breached the settlement agreement when it failed to make the entire $20,000 payment in August 2008 and that Bilello was entitled to ask for NYPS to make the payments it was required under the contract without this being considered an anticipatory breach.

The record supports the trial court's findings that NYPS breached and Bilello did not unconditionally refuse to perform. NYPS paid only $7,500 of the $20,000 payment due to Bilello in August 2008. After NYPS's breach, Bilello informed NYPS that, based on the breach, he was entitled to begin operating a business in the restricted areas, i.e., consider the agreement beached and cease his own performance. However, he also stated that he would rather be paid and he could work with NYPS on the payment date as long as the delay would not be for more than another few days. NYPS refused to pay the remaining $12,500 until it received confirmation from Bilello that there was no material breach and all

17

remaining provisions of the settlement agreement would remain intact. This evidence does not conclusively establish an unconditional refusal by Bilello to perform the contract in the future. *See Van Polen*, 23 S.W.3d at 516. Therefore, we conclude that the evidence is legally sufficient to support the trial court's findings and NYPS failed to conclusively establish its defense of repudiation.

Accordingly, we overrule NYPS's third point of error.

## B. Motion for Continuance

In its fourth point of error, NYPS contends the trial court abused its discretion by refusing to grant its motion for continuance based, in part, on the unavailability of a potential witness, Stephen Ripp, the chief financial officer of NYPS. According to NYPS, Ripp participated in the settlement negotiations that resulted in the 2006 settlement agreement and would have testified that the payment to Bilello under the settlement agreement was in consideration for his interest in NYPS and that the information relied upon by both sides in calculating that value was materially incorrect. NYPS contends it was unable to reach Ripp for trial, despite its diligent attempts. Thus, NYPS maintains that it established good cause for a continuance and the trial court abused its discretion by refusing to grant the motion. In response, Bilello contends that the trial court did not abuse its discretion by denying NYPS's motion because the motion did not comply with the requirements of Texas Rule of Civil Procedure 252.

18

We review a trial court's denial of a motion for continuance for an abuse of discretion. *See Moreno v. Perez*, 363 S.W.3d 725, 745 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The absence of a material witness provides sufficient cause for a continuance, but only if the party requesting the continuance has exercised proper diligence to procure the testimony of the witness. *Daughtery v. Jacobs*, 187 S.W.3d 607, 619 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Rule 252 provides as follows:

> If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

TEX. R. CIV. P. 252. A trial court does not abuse its discretion by denying a motion for continuance that does not meet the requirements of Rule 252. *Wal-Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet. denied) (citing *Pape v. Guadalupe-Blanco River Auth.*, 48 S.W.3d 908, 914 (Tex. App.—Austin 2001, pet. denied)).

Here, NYPS moved for a continuance because "[a] critical witness in this matter, Stephen J. Ripp, who is expected to offer necessary testimony in regard to

19

the mutual mistake involving the facts underlying the contract which is the basis of this lawsuit, has been unreachable, and unresponsive to multiple attempts to contact him and messages left for him." Although NYPS generally describes Ripp as a "critical witness" who would provide "necessary testimony" relating to its defense of mutual mistake, there is nothing in the motion or affidavit stating what it expects to prove by Ripp's testimony, as is required by Rule 252. NYPS's reasoning provided in its appellate brief of what it expected to prove through Ripp's testimony—that Ripp would testify the payment to Bilello was for a repurchase of his shares, the value of those shares was the basis for the purchase, and the information relied on by both sides in calculating that number was materially incorrect—was not included in its motion for continuance or the affidavit. Additionally, NYPS failed to include Ripp's address in its motion, which is also required by Rule 252.

NYPS also failed to demonstrate that it exercised due diligence in procuring Ripp's testimony. There is nothing in the record to suggest that NYPS subpoenaed Ripp or took or attempted to take his deposition at any point from the time the original petition was filed in December 2008 until trial in July 2011. Nor did NYPS explain in its motion or affidavit why it could not have done so. For these reasons, we conclude that the trial court did not abuse its discretion by denying NYPS's motion for continuance. *See Lynd v. Wesley*, 705 S.W.2d 759, 764 (Tex.

20

App.—Houston [14th Dist.] 1986, no writ) (affirming trial court's denial of motion for continuance and holding appellant failed to comply with requirements of Rule 252 where appellant did not allege materiality of witness's testimony or explain what he sought to prove by testimony, and failed to subpoena witness or take deposition and provided no reasons why he could not have done so); *see also Daugherty*, 187 S.W.3d at 619 (upholding trial court's denial of motion for continuance in part because appellant failed to show absent witness's testimony could not have been taken by deposition); *Stiles v. Royal Ins. Co. of Am.*, 798 S.W.2d 591, 596–97 (Tex. App.—Dallas 1990, writ denied) (holding appellant did not use due diligence to obtain testimony from witness through subpoena or deposition).

We overrule NYPS's fourth point of error.

## C. Bilello's Cross-Point on Attorney's Fees

In his sole cross-point, Bilello contends the trial court erred in denying his request for attorney's fees. He requests that this court reverse the judgment of the trial court and remand for an evidentiary hearing to determine the amount of attorney's fees that should be awarded to him. NYPS responds that this court should not consider Bilello's cross-point because he failed to file a notice of appeal from the trial court's judgment.

Under Rule 25.1 of the Texas Rules of Appellate Procedure, any "party who seeks to alter the trial court's judgment . . . must file a notice of appeal." TEX. R. APP. P. 25.1(c). Unless a party seeking to alter a trial court's judgment files a notice of appeal of its own, the appellate court is not permitted to grant more favorable relief than the trial court except for just cause. *Id.*; *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004); *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.— Houston [1st Dist.] 1999, no pet). In *Dean*, this court further explained:

> If an appellee is satisfied with the relief granted by the trial court, but merely wants to present additional, independent grounds for affirming the trial court's judgment, no notice of appeal is required. The independent grounds for affirmance can be raised in a cross-point as long as the appellee is not requesting greater relief than that awarded by the trial court.

*Dean*, 999 S.W.2d at 818. Several courts have applied this rule in holding that an appellee waived cross-issues by failing to file a notice of appeal. *See, e.g.*, *Brooks*, 141 S.W.3d at 171 (holding appellee's challenge to portion of trial court's judgment was not preserved for appellate review because appellee, as party who sought to alter trial court's judgment, did not file notice of appeal from trial court's judgment); *Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 586 (Tex. 2002) (holding that county seeking to alter trial court's partial summary judgment waived this challenge by failing to file notice of appeal); *Cities of Allen v. R.R. Comm'n of Tex.*, 309 S.W.3d 563, 576 (Tex. App.—Austin 2010), *aff'd in*

22

*part, rev'd on other grounds*, *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156 (Tex. 2011) (holding that appellee's cross-point, which did not present alternative basis for affirming judgment but sought holding that trial court erred in issuing one of its conclusions of law, was not properly before court because appellees sought more favorable relief than was given in trial court and appellees did not file notice of appeal); *Granado v. Meza*, 360 S.W.3d 613, 616 (Tex. App.—San Antonio 2011, pet. filed) (holding that appellee, who challenged in cross-point trial court's finding that statute of limitations on child support had not yet run, waived his right to raise cross point because appellee did not file notice of appeal); *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 642–43 (Tex. App.—Dallas 2010, no pet.) (holding that appellees were precluded from raising argument on appeal that trial court erred in dismissing, rather than staying case, because they were seeking more favorable relief than given in trial court and failed to file notice of appeal). And, the Fourteenth Court of Appeals, noting that it could not grant the appellee more favorable relief than the trial court in the absence of a notice of appeal, has specifically declined to address an appellee's cross-point asserting an entitlement to attorney's fees as the prevailing party under a lease where the appellee failed to file a notice of appeal. *See CHCA E. Houston, L.P. v. Henderson*, 99 S.W.3d 630, 636 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

In his cross-point, Bilello does not present an "additional, independent ground[] for affirming the trial court's judgment." *Dean*, 999 S.W.3d at 818; *see also Cities of Allen*, 309 S.W.3d at 576. Rather, he alleges that the trial court reversibly erred in excluding testimony relating to attorney's fees and refusing to award attorney's fees and requests that this court reverse and remand for an evidentiary hearing on the amount of attorney's fees to be awarded. We hold that Bilello is seeking to alter the trial court's judgment and obtain more relief than the trial court granted him; therefore, he was required to file a notice of appeal. *See Cities of Allen*, 309 S.W.3d at 576; *Small* 310 S.W.3d at 642–43; *CHCA E. Houston*, 99 S.W.3d at 636.

## Conclusion

We conclude that the trial court did not err in rejecting NYPS's affirmative defenses of mutual mistake, novation, and repudiation. We also conclude the trial court did not abuse its discretion by denying NYPS's motion for a continuance. Finally, Bilello failed to file a notice of appeal from the trial court's judgment; therefore, he waived his right to raise his cross-point relating to the trial court's failure to award attorney's fees. Accordingly, we affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

24