# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-20472

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2017

Lyle W. Cayce
Clerk

LIBERTY MUTUAL INSURANCE COMPANY

      Plaintiff - Appellee

v.

SERVISAIR, L.L.C., now known as Swissport SA, L.L.C.; SERVISAIR USA, INCORPORATED; SERVISAIR FUEL SERVICES, L.L.C., now known as Swissport SA Fuel Services, L.L.C.; TRI-STAR ACQUISITION CORPORATION,

      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-3667

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

PER CURIAM:*

Servisair, L.L.C., now known as Swissport SA, L.L.C.; Servisair USA, Inc.; Servisair Fuel Service, L.L.C., now known as Swissport SA Fuel Services, L.L.C.; and Tri-Star Acquisition Corp. (collectively, "Servisair") appeal from a grant of summary judgment to Liberty Mutual Insurance Company ("Liberty

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20472

Mutual") on its breach of contract claim for a workers' compensation insurance policy. We AFFIRM.[1]

Liberty Mutual and Servisair entered into a valid "guaranteed cost" insurance policy in which the final premium would be determined based on an audit of Servisair's payroll classifications at the end of the policy period. An estimated premium was generated at the policy's inception based on payroll numbers and classifications provided by Servisair's payroll department. There is no dispute that Servisair significantly over-allocated payroll to clerical employees, which is a considerably less expensive classification. After the policy period ended, the payroll audit revealed that Servisair's actual payroll had a much greater exposure to the more expensive classifications and less exposure to the less expensive clerical classification. Based on the more expensive actual payroll numbers and the agreed-upon rates used for the estimated premium, Liberty Mutual billed Servisair for an additional $3,641,962. Servisair refused to pay the additional premium and this lawsuit ensued.

On appeal, Servisair makes two primary arguments: (1) the policy is the product of a mutual mistake about the premium calculations, and (2) the policy's premium calculation provisions are ambiguous.

*Mutual Mistake.* The mutual mistake argument is easily dispatched. The mistake, if any, was Servisair's alone. Servisair argues that "the underlying factual basis on which [Servisair and Liberty Mutual] relied in negotiating and agreeing to the policy was inaccurate, in that the allocations of payroll to individual insurance class codes was substantially inaccurate[.]"

---

[1] The appeal is from a final judgment issued by a United States magistrate judge who presided over the matter by consent under 28 U.S.C. § 636(c). The district court had diversity jurisdiction over the case under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. The standard of review is de novo. *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 297 (5th Cir. 2014).

No. 16-20472

Specifically, Servisair over-allocated payroll to less expensive clerical employees. This error resulted in a premium estimate significantly less expensive than the final premium, which was calculated using the true payroll classification numbers revealed by the audit. The magistrate judge concluded that the mistake was not material to the agreement because the policy clearly contemplated that the payroll classification numbers might be inaccurate and shifted that risk to Servisair.

Part Five section E of the policy explains which parties bear the risk of an inaccurate premium estimate:

> If the final premium is more than the premium [Servisair] paid to [Liberty Mutual], [Servisair] must pay [Liberty Mutual] the balance. If it is less, [Liberty Mutual] will refund the balance to [Servisair]. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

By its plain terms, the policy provides that Servisair is responsible for paying more than the estimated premium if the final premium exceeds the estimated premium. This is an open-ended obligation with no limit on the amount of additional premium Servisair might ultimately owe.

There is no dispute that Texas law applies to this insurance dispute. "The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-on exchange." *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 212 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Importantly, "mutual mistake should not be available to avoid the results of an unhappy bargain" because the "[p]arties should be able to rely on the finality of freely bargained agreements." *Id.* (citing *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990)). Accordingly, "a party bears the risk of mistake when the risk is allocated to him by agreement." *Cherry v. McCall*, 138 S.W.3d 35, 40 (Tex. App.—San Antonio 2004, pet. denied) (citing

3

No. 16-20472

RESTATEMENT (SECOND) OF CONTRACTS § 154 (AM. LAW INST. 1981) and *de Monet v. PERA*, 877 S.W.2d 352, 359 (Tex. App.—Dallas 1994, no writ)); *accord Smith v. Lagerstam*, No. 03-05-00275-CV, 2007 WL 2066298, at *8 (Tex. App.—Austin 2007, no pet.) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 154(a) (AM. LAW INST. 1981)).  When the risk of mistake is allocated to the defendant by agreement, the defendant's mutual mistake defense "fails as a matter of law."  *Cherry*, 138 S.W.3d at 40; *accord Transworld Leasing Corp. v. Wells Fargo Auto Fin., LLC*, No. 04-12-00036-CV, 2012 WL 4578591, at *6 (Tex. App.—San Antonio 2012, pet. denied).  That is the result here.  As the magistrate judge correctly concluded, the risk of an underestimated premium was "placed squarely on the shoulders of Servisair."

*Ambiguity*.  Turning to the issue of ambiguity, Servisair challenges the terms "guaranteed cost," "rules," and "rating plans" as ambiguous, particularly regarding their effect on the "schedule ratings" used to calculate the final premium after the audit.  But when Servisair's arguments are analyzed, the real argument it is making is that Liberty Mutual had a particular profit goal in mind in light of Servisair's loss history and pursued that goal in setting the schedule ratings.  In other words, Servisair contends that Liberty Mutual did not care about the payroll inaccuracies when setting the policy; it cared about achieving a particular profit and achieved that profit by adjusting the schedule ratings according to loss history.  Given this conclusion, Servisair maintains that Liberty Mutual should have readjusted the schedule ratings when calculating the final premium to achieve the exact same profit goal pursued in the estimated premium.

"If a written contract is amenable to a definite legal meaning, then it is unambiguous and will be enforced as written."  *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009).  Extrinsic evidence is admissible to determine the parties' intent only *after* the contract is

4

determined to be ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Accordingly, evidence of the parties' intentions cannot be used to create an ambiguity. *Id.* at 521 n.5. Thus, Servisair's repeated efforts to create an ambiguity by relying on the profit motives expressed by Liberty Mutual employees at deposition do not work if the language itself is clear.

The term "guaranteed cost" refers to the type of insurance policy to which the parties agreed and is defined by the terms of the policy. The policy itself explains how premiums are initially calculated and then subject to modification as described above. No ambiguity is presented there. As far as "rules" and "rating plans," the policy states that the applicable rules and rating plans used to calculate the final premium are the rules and rating plans in Liberty Mutual's manuals, which are not in the record. At oral argument, however, Servisair disclaimed any argument that the manuals are either unclear or necessary to the court's understanding of the rate calculation. The policy itself clearly refers to these manuals as the source of the rules and rating plans and is thus unambiguous.

We agree with the magistrate judge that Servisair's arguments about the "schedule ratings" do not create an ambiguity. Servisair relies on extrinsic evidence to show how the schedule ratings were calculated, but extrinsic evidence is not needed to understand the schedule ratings provided in the policy. However those "schedule ratings" were calculated, they were clearly stated and agreed upon at the policy's inception and were not changed at the time of final calculation.

Servisair made a deal that, in retrospect, it did not like. That does not allow it to rewrite or avoid its obligations. We AFFIRM.