

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00221-CR
No. 02-25-00222-CR

_____

KEENAN DEANDRE BLACK, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 2
Denton County, Texas
Trial Court Nos. CR-2023-04372-B, CR-2023-04373-B

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

### I. Introduction

Appellant Keenan Deandre Black pled nolo contendere to two Class A misdemeanors—driving while intoxicated (DWI) with an alcohol concentration level of 0.15 or more, *see* Tex. Penal Code Ann. § 49.04(d), and resisting arrest, *see id.* § 38.03(a), (c). The trial court sentenced him to 360 days' confinement in each case, to be served concurrently. *See id.* § 12.21 (stating that Class A misdemeanor punishment may include confinement in jail for a term not to exceed one year and/or up to a $4,000 fine). The trial court then suspended his sentences and placed him on 15 months' community supervision.[1]

Less than a year later, in each case, the State moved to revoke Black's community supervision and later filed an amended motion to revoke in each case. Black pled not true to the State's allegations, but at the revocation hearing's conclusion, the trial court found three allegations true, revoked Black's community supervision in each case, sentenced him to 90-day concurrent sentences in county jail, found him indigent, and orally waived the $6,000 Chapter 709 fine in the DWI case.[2] However, in the DWI

---

[1]The terms "community supervision" and "probation" are synonymous and are generally used interchangeably. *See Hongpathoum v. State*, 578 S.W.3d 213, 214 n.1 (Tex. App.—Fort Worth 2019, no pet.).

[2]*See* Tex. Transp. Code Ann. § 709.001(b)(3) (stating that a person who has been convicted of DWI shall pay a fine of $6,000 for a first or subsequent conviction if it is shown at trial that his or her blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed), (c) ("If the court having

case's written judgment, the trial court wrote in "709 fine $6,000," despite the oral pronouncement and an order signed the same day in which it found that Black was indigent and in which it ordered the Texas Department of Public Safety to "WAIVE all fines that would otherwise be assessed under Chapter 709 as a result of the conviction in this case."

In three issues, Black asserts that the trial court abused its discretion by revoking his community supervision because the evidence established the contractual defenses of modification and novation and that the trial court's oral pronouncement waiving the $6,000 Chapter 709 fine during sentencing controls over the written judgment in the DWI case. The State responds that Black did not preserve any contractual defenses and that his community-supervision officer lacked the authority to modify or create new deadlines, but it does not oppose modifying the DWI case's written judgment to remove the unpronounced $6,000 fine and concedes that the bill of costs in that case should be modified to reflect that Black does not owe it.[3]

Because the trial court did not abuse its discretion by revoking Black's community supervision, we affirm the judgment in the resisting-arrest case, trial court

_____

jurisdiction over an offense that is the basis for a fine imposed under this section makes a finding that the person is indigent, the court shall waive all fines and costs imposed on the person under this section.").

[3]We are not bound by the State's concessions. *See Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018) ("We, of course, are not bound by any agreement or concessions by the parties on an issue of law.").

cause number CR-2023-04373-B (appellate cause number 02-25-00222-CR), and we modify the judgment in the DWI case, trial court cause number CR-2023-04372-B (appellate cause number 02-25-00221-CR), to delete the $6,000 fine from the judgment and bill of costs and affirm that judgment as modified.

## II. Background

The trial court's probation order contained the following conditions that it later found had been violated as alleged in the State's amended motion to revoke in each case:

> (8) Within 60 days [i.e., by March 10, 2024,] the Defendant shall complete a DRUG/ALCOHOL EVALUATION through an agency approved by his/her Supervision Officer. If treatment is deemed necessary, the defendant shall abide by any and all treatment directives, comply with the rules and regulations of the approved agency, pay all costs incurred for such services. The Defendant shall continue in said treatment until successfully completed as stated by the Defendant's counselor/provider[;]
>
> . . . .
>
> (10) Successfully complete, within 180 days, [i.e., by July 8, 2024,] a DWI Safety Education Program . . . through an agency approved by your Supervision Officer, pay all required fees for the program, and provide written proof of the completion of the program to the CSCD within 10 days of the date of completion; [and]
>
> . . . .
>
> (13) Participate in the . . . Anger Management Program; . . . begin participation in the program(s) within 60 days of this order [i.e., March 10, 2024,] at an approved agency, comply with the rules of the agency, and pay all costs of the services. Continue in said treatment until successfully completed as stated by the counselor with the agreement of your Supervision officer. Provide written proof to the Supervision Officer within 30 days of completion[, i.e., by April 9, 2024.]

4

In requesting revocation, the State alleged that Black had violated condition (8) by failing to complete treatment deemed necessary, namely the Marijuana Diversion Program, and by failing to abide by any and all treatment directives, to comply with the rules and regulations of the approved agency, to pay all costs incurred for such services, and to continue in said treatment until successfully completed as stated by the counselor with the agreement of his Community Supervision Officer; condition (10) by failing to complete the Drug Offender Education Program within 180 days as ordered by the trial court; and condition (13) by failing to complete the Anger Management Program as ordered by the trial court.[4] Black pleaded not true to the State's allegations at the revocation hearing.

Before testimony began, the prosecutor asked the trial court to take judicial notice of its file, and the trial court did so. The State then called Pollie Upton, a Denton County CSCD officer who was a custodian of records for Denton County Probation and supervised probationers like Black, who were monitored outside of Denton County.[5]

---

[4]The State's amended motions also contained an allegation about another ground, but the State abandoned that ground at the hearing. The State's amended motion in the DWI case also contained an additional allegation, but because the trial court did not find that ground true, we have not included it in our recitation.

[5]Upton did not know to whom Black had been reporting outside of Denton County.

Upton testified that Black had been required in both of his cases to complete a drug-and-alcohol evaluation. She stated, upon reviewing her records, "looks like it was completed on time," but also stated that she did not know "how long they gave him to complete that." She did not clarify who "they" were.

Upton further stated, however, that the Marijuana Diversion Program was a treatment directive that came from the drug-and-alcohol evaluation and that Black had failed to complete it until April 21, 2025, after the case had expired.[6] When the State filed its initial motions to revoke on December 2, 2024, Black had not completed the program in a timely fashion. He had, however, completed it by the time of the July 1, 2025 hearing.

Upton also stated that Black had been required to complete a drug-offender education program within 180 days of reporting to probation but had failed to complete that program within the 180-day period. And he had been required to complete an anger-management program, to begin within 60 days of his reporting to probation, but

---

[6]Black's community supervision began on January 10, 2024, and ended 15 months later, on April 10, 2025. However, a trial court retains jurisdiction to hold a hearing and to revoke, continue, or modify community supervision if, before the community-supervision period has expired, (1) the State files a motion to revoke, continue, or modify and (2) a capias is issued for the defendant's arrest. Tex. Code Crim. Proc. Ann. art. 42A.751(l). The State filed its first motion to revoke in each case on December 2, 2024, and a capias for Black's arrest was issued on December 10, 2024, in each case.

he had failed to complete it as ordered. Upton acknowledged that Black had completed the anger-management requirement as of the July 1, 2025 hearing.

Black testified that because he lived in Ellis County, his probation was transferred there after a six-month delay, resulting in his not starting any programs until June 2024. On cross-examination, he acknowledged that when he had agreed to the plea bargain in January 2024, his defense counsel had gone over the probation conditions with him, and then they had been reviewed again when he reported to probation. The deadlines to complete the conditions had been reviewed with him both times. He agreed that he did not start any classes until six months into his probation despite knowing that there were deadlines associated with those classes.

Black claimed that in January 2024, his probation officer told him, "[I]t do[es]n't make any sense for you to start classes in Denton County when you're going to be transferred to Ellis." He attributed the six-month delay to Ellis County's deciding whether to accept him, stating, "[F]or the entire first six months of probation, I didn't have -- I didn't report to anybody. I was waiting for Ellis County." Black testified that when he asked the Denton County probation officer about what classes to start, the Denton County probation officer told him, "Don't worry about it right now."

Black stated that the marijuana-diversion program was 18 weeks (one class per week), the anger management class was "like, 12 or 13" weeks, and the drug-offender education program "was a week." After he received the State's first motions to revoke in December 2024, he "ended up completing, signing up for all the remaining classes,"

7

including the ones listed above. He disputed that he had not timely completed them, asserting that he could not start them any sooner because although he had been given a list, when his Denton County probation officer "was notified of where [he] stayed at," the Denton County probation officer took the list. Black also testified about his indigence based on his supporting three biological children and two stepchildren and his living paycheck-to-paycheck despite working overtime, seven days a week, and twelve hours a day.

At the hearing's conclusion, the prosecutor argued that Black had failed to timely complete his community-supervision conditions despite their having been explained to him and despite his knowledge of their associated deadlines. Black's counsel responded, "He should have gotten the classes done on time; but when it was brought to his attention that the classes were delinquent, he fixed it." The trial court found true the State's allegations as to conditions 8, 10, and 13; revoked Black's community supervision; and sentenced him to 90 days in jail in each case.

The trial court then stated,

> I will not assess any fine. Any money you owe the County, I will order that that run concurrent with your sentence. You won't have to pay any money. You won't owe any money when you get out of jail. . . . *I will make a finding that you are indigent for purpose[s] of [the Chapter 709] fine, and that will waive that $6,000 fine.* [Emphasis added.]

However, the written DWI judgment contains a handwritten notation, "709 fine $6,000," and the bill of costs in that case assesses a $6,000 "DWI Traffic Fine" under "Traffic Code 709.001."

## III. Revocation

In his first two issues, Black contends that the trial court abused its discretion by revoking his community supervision because (1) "the testimony established the contractual defense of modification—that [he] and his community supervision officer agreed to amend the timing term for completion of certain classes" and (2) "the testimony established the contractual defense of novation—that [he] and his community supervision officer superseded the original terms with new terms on the timing for completion of certain classes."

### A. Standard of review and applicable law

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision, and we review the trial court's decision to revoke community supervision for an abuse of discretion. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). We review the evidence in the light most favorable to the trial court's decision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

The Code of Criminal Procedure allows the trial court to modify community-supervision conditions, stating that the trial court may do so "at any time during the period of community supervision," and that "[e]xcept as provided by Article

9

42A.052(a), *only* the judge may modify the conditions." Tex. Code Crim. Proc. Ann. art. 42A.051(b) (emphasis added).

Article 42A.052(a) provides an exception to the judge-only modification requirement, stating that the trial court who placed a defendant on community supervision

> *may* authorize the supervision officer supervising the defendant . . . to modify the conditions of community supervision for the limited purposes of:
>
> > (1) transferring the defendant to different programs within the community supervision continuum of programs and sanctions; or
> >
> > (2) prioritizing the conditions ordered by the court according to the defendant's progress under supervision.

*Id.* art. 42A.052(a) (emphasis added). Under those circumstances, the supervision officer "shall . . . file a copy of the modified conditions with the sentencing court." *Id.* art. 42A.052(b)(2).

Further, if the defendant agrees to the modification in writing, the supervision officer "shall file a copy of the modified conditions with the district clerk and the conditions shall be enforced as modified." *Id.* art. 42A.052(c). If, however, the defendant does not agree to the modification in writing, then the supervision officer "shall refer the case to the judge for modification in the manner provided by Article 42A.752," *id.*, which provides for the trial court's ability to continue or modify community supervision after a violation, *id.* art. 42A.752(a).

## B. Analysis

Referring us to *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999),[7] Black argues that he agreed to and completed the classes "in the manner in which he was instructed by his supervision officer" and that he and his supervision officer "renegotiated the terms of supervision specific to the timing of the classes."

As pointed out by the State, Black ignores that he failed to preserve these civil-law contract defenses[8] by raising them in the trial court. *See* Tex. R. App. P. 33.1. He also ignores that there is no evidence and nothing in the record to support that the trial court modified his community supervision in the manner in which he argues, that the trial court gave his Ellis County community-supervision officer permission to modify it in that manner, or that his Ellis County community-supervision officer modified it in compliance with the Code of Criminal Procedure. *See* Tex. Code Crim.

---

[7]In *Speth*, the Court of Criminal Appeals stated, "An award of community supervision is not a right, but a contractual privilege." 6 S.W.3d at 534.

[8]Black refers us to several civil cases to support his modification and novation arguments. However, one of those cases points out that the burden of proving modification rests upon the party asserting it, *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) (discussing employment-at-will situations), and another states that a party asserting modification in a bench trial must request findings in support of the defense to avoid waiving it, *RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 449 (Tex. App.—Dallas 2011, no pet.). Another sets out the novation-defense elements, which include the old contract's extinguishment and the new contract's validity. *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Thus, even if these defenses could apply here, Black has failed to preserve them for our review or to put forth sufficient evidence to support them.

Proc. Ann. arts. 42A.051(b), .052(a)–(c); *see also Speth*, 6 S.W.3d at 534 (stating that community-supervision conditions "are terms of the contract entered into between *the trial court and the defendant*" (emphasis added)). And it is undisputed that Black did not meet his community-supervision deadlines. Accordingly, the record does not reflect that the trial court abused its discretion by revoking Black's community supervision, and we overrule his first two issues.

## IV. Pronouncement

In his third issue, Black argues that the written judgment assessing the $6,000 fine is inconsistent with the trial court's oral pronouncement and thus must be modified.

"A fine is not a court cost or fee; it is part of the punishment." *Anastassov v. State*, 664 S.W.3d 815, 823 (Tex. Crim. App. 2022). Thus, barring a jury-verdict exception not applicable here, *see Ette v. State*, 559 S.W.3d 511, 513 (Tex. Crim. App. 2018), a fine must be orally pronounced in the defendant's presence. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). Instead of orally pronouncing the $6,000 fine at sentencing, the trial court expressly stated that it was not going to impose it because it found Black indigent and also entered a separate order to that effect. Accordingly, we sustain Black's third issue.

## V. Conclusion

Having overruled Black's first two issues but having sustained his third issue, we affirm the trial court's resisting-arrest judgment and affirm as modified the trial court's

DWI judgment by deleting the $6,000 fine that was not orally pronounced during sentencing and by deleting it from the bill of costs in that case.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 5, 2026