**Anna Marie NGUYEN, Appellant,**

v.

**Alex YOVAN and Philip Yovan, Appellees.**

**No. 01–07–00660–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 1, 2009.

Rehearing Overruled Dec. 9, 2009.

---

Thomas W. McQuage, Galveston, TX, for Appellant.

Kenneth C. Kaye, Law Offices of Kenneth C. Kaye, League City, TX, Walter J. Kronzer III, Walter James Kronzer, III, P.C., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

In this suit on a contract for deed, appellant, Anna Marie Nguyen appeals the trial court's take-nothing judgment in fa-

vor of the appellees, Alex Yovan and Philip Yovan. In two issues, Nguyen argues that (1) the contract is not barred by the statute of frauds and (2) the evidence supports numerous statutory violations.

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

### Background

In early 2002, Nguyen and Alex Yovan met at 15817 Highway 6 in Santa Fe, Texas (the "property"), the site of land and a home for sale by Alex Yovan. Nguyen learned that the property was originally owned by one of Alex's sons, Steven Yovan, who later deeded it to another of Alex's sons, Phillip Yovan. Phillip deeded the property to Alex.

Nguyen decided to purchase the property, and Donna Yovan, Alex's wife, drafted the contract for deed and prepared an amortization schedule. The contract was originally in the names of Nguyen's children, who were to live in the house while they went to college. In August 2003, the contract was revised to substitute Nguyen for her children, but it was otherwise identical to the first contract.

The contract for deed between Alex and Nguyen provided for the purchase of the land and home at 15817 Hwy. 6, Santa Fe, TX. The property was further identified as "ABST 613 Page 6 Lots 5 thru 7 HIGHWAY 6 UNRECORDED SUB." Nguyen agreed to purchase the property from Alex for $37,000 at 10% interest for 10 years, making a $5,000 down payment and paying $422.88 a month. The contract for deed stated, "It shall be the responsibility of the sellers to obtain and maintain insurance on the house" and to "pay property taxes when they become due." However, it also stated that "the buyers [Nguyen] will be responsible for April–Dec. or 75% of the taxes" for 2002. It then stated, "For the year 2003 and subsequent years, all taxes are the responsibility of the buyer. Tax receipt copies will be submitted on or before the first of February each year." Finally, the contract provided, "Failure to maintain insurance or failure to pay taxes as they become due will revoke this contract and sellers [sic] will vacate the property."

After receiving the contract for deed, Nguyen gave Alex a $5,000 cashier's check, and Nguyen's son began to remodel the house by replacing the floor, refurbishing the inside, repairing the ceiling, and replacing a window. Nguyen testified that she spent approximately $5,000 on these repairs. Nguyen lived in the house in 2003; she also had renters in the house at one time; and her daughter lived in the house.

Nguyen timely made payments on the contract for deed. In 2005, disputes arose regarding insurance and taxes. Specifically, Alex wrote a July 27, 2005 letter to Nguyen addressing the payment of taxes for 2003 and 2004, stating that Alex had paid the taxes and that he must be reimbursed immediately. Alex wrote another letter on August 2, 2005, stating that the 2003 and 2004 taxes were due in the amount of $2,853.24. Alex asked that Nguyen call him to inform him how the taxes would be handled, and he wrote that a failure to pay the taxes would revoke the contract. Nguyen may have paid the taxes late, but she eventually paid all of the taxes.

In the middle of 2005, Nguyen saw a surveyor to determine where her boundaries were so that she could install a storage shed. When she went to the surveyor's office, she obtained a copy of a deed from Steven Yovan to Phillip Yovan referencing a lien in favor of Texas First Bank. Surprised by the lien, Nguyen talked to

Alex to make sure that she was making payments on the right property, and Alex tried to explain how he had acquired the property. He denied that liens existed on the property. Alex also gave "stipulations" to Nguyen, which were notarized documents explaining the transfer of ownership from Philip to Alex. These stipulations stated that, to Alex's knowledge, there were no liens on the property. However, Nguyen later learned that the property had a number of liens on it: a lien from Texas First Bank, two federal tax liens for failing to pay taxes, and a Builder's and Mechanic's lien. These liens were not mentioned in the contract for deed Nguyen signed, and she was not aware of their existence at the time she signed the contract for deed.

In 2006, Nguyen talked to Philip about paying off the purchase price on the contract for deed. Philip said he was going through a divorce so they should wait a few months. Philip testified that he never heard about it again, although Nguyen testified that she called Philip and he did not return her calls. Even though she did not pay off the contract for deed, Nguyen continued to make payments on it.

The contract for deed specified that the sellers had the "responsibility . . . to obtain and maintain insurance on the house." However, Donna, Alex Yovan's wife, testified that she and Nguyen had an "agreement among friends" that consisted of Nguyen's making payments on the note in a timely fashion and Nguyen's providing insurance, including homeowner's and windstorm insurance. Donna further testified that, in April 2006, she verbally told Nguyen to pay the property taxes.

The disputes over insurance and payment of taxes culminated in a letter written by Phillip on April 19, 2006, stating that he had not received proof of insurance and that property taxes had not been paid.

The letter also stated, "[T]he house was not boarded up or protected in any way during the hurricane and the front roof shows damage from the wind. Verification of windstorm insurance needs to be provided, as well." The letter stated that property taxes for 2005 needed to be paid and that Nguyen should provide a check payable to the taxing authorities or pay the taxing authorities directly. Nguyen testified that she made payments every month and that she paid when she was asked to. She recalled that in 2005, she was asked to pay the 2003 taxes but she had never been asked before. She understood that Alex would pay for the taxes and then ask for reimbursement from her. She testified that she provided homeowners insurance to the Yovans and that she had never been asked to provide windstorm insurance. Alex agreed that the April 2006 letter was the first time they had specifically mentioned windstorm insurance. In response to this letter, Nguyen paid the school taxes, but she testified that she did not know about the county taxes. After she was notified by Donna, Nguyen paid the county taxes as well.

On August 3, 2006, Nguyen received a letter from Philip stating that her contract was null and void and that the contract was terminated because "the house was not boarded up or protected in any way during the hurricane and the front roof shows damage from the wind." The letter also stated, "The property taxes for 2005 were to be paid by January 31, 2006. These payments have been requested several times, and, as of the end of July, they are still due. This violation of the contract has occurred every year of this contract." Nguyen testified that, after filing suit, she paid the outstanding property taxes but she did not fix the roof after the hurricane. As of the day of trial, Nguyen testified that she still owed $19,646.26 on the con-

tract for deed, or 60% of the original $37,000 purchase price.

On August 30, 2006, Nguyen sued Alex and Philip on the contract for deed, seeking a declaratory judgment as to her rights under the contract, title to the property, possession, and specific performance of the Yovans' obligation to convey title. Nguyen also alleged the Yovans had violated various statutes,[1] entitling her to damages for breach of contract, violations of the Texas Deceptive Trade Practices Act,[2] and common law fraud. Nguyen also sought attorney's fees. In their third amended original answer, the Yovans generally denied the allegations and answered that any contract between themselves and Nguyen was void because the property description was too vague.

Following a trial to the bench, the trial court rendered a take-nothing judgment in favor of the Yovans. The trial court issued findings of fact and conclusions of law. In pertinent part, the trial court's findings stated:

10. The property description listed in the 2002 Agreement and the 2003 Agreement does not furnish within itself, or by reference to some other existing writing, the means or data by which the property to be conveyed may be identified with reasonable certainty.

13. Anna Marie Nguyen and her children have not made permanent and valuable improvements to the property.

14. Anna Marie Nguyen and her children have not timely paid the real estate taxes on the property.

15. Anna Marie Nguyen and her children have not continuously since 2002 maintained insurance on the property.

24. Alex Yovan and Philip Yovan in good faith furnished Anna Marie Nguyen with the information required by statute.

25. Anna Marie Nguyen suffered no damage by Alex Yovan or Phillip Yovan's failure to provide her with "annual accountings" each year.

26. Alex Yovan did not engage in any false, misleading or deceptive act that Anna Marie Nguyen relied on to her detriment and that was a producing cause of damages to Anna Marie Nguyen.

27. Philip Yovan did not engage in any false, misleading or deceptive act that Anna Marie Nguyen relied on to her detriment and that was a producing cause of damages to Anna Marie Nguyen.

In pertinent part, the trial court made the following conclusions of law:

1. The agreements which are the subject of this suit are barred by the Statute of Frauds.

2. Alex Yovan and Philip Yovan were not required to abide by the provisions of Sections 5.061, et seq. of the Texas Property Code. If they were required to abide by such provisions, they made a good faith effort to abide by them.

3. Philip Yovan gave proper notice to Anna Marie Nguyen of the termination of the agreements.

## Statute of Frauds

In her first issue, Nguyen argues that the trial court improperly concluded that the contract violated the statute of frauds.

1. See TEX. PROP.CODE ANN. §§ 5.063–5.065 (Vernon 2004), § 5.077 (Vernon Supp. 2008), § 5.079 (Vernon 2004).

2. See TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp. 2008), § 27.01 (Vernon 2009).

■ The statute of frauds requires that all conveyances of real property be in writing and signed by the party to be charged. *See* Tex. Bus. & Com.Code Ann. § 26.01(b)(4) (Vernon 2009). Whether a contract falls within the statute of frauds is a question of law. *Iacono v. Lyons,* 16 S.W.3d 92, 94 (Tex.App.-Houston [1st Dist.] 2000, no pet.). We review the trial court's conclusions of law de novo. *Smith v. Smith,* 22 S.W.3d 140, 149 (Tex.App.-Houston [14th Dist.] 2000, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow,* 932 S.W.2d 627, 631 (Tex.App.-Houston [14th Dist.] 1996, no writ). Incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

■ For a land sales contract to meet the requirements of the statute of frauds, it must furnish within itself or by reference to another existing writing the means or data to identify the particular land with reasonable certainty. *See Pick v. Bartel,* 659 S.W.2d 636, 637 (Tex.1983) (concluding description of land not certain when "No city, county or state is mentioned in connection with its location. No lot or block number is given, nor is there any indication as to the amount of land. No description by any particular name appears."); *Jones v. Kelley,* 614 S.W.2d 95, 99 (Tex. 1981) (concluding that property description satisfied statute of frauds when metes and bounds description was in evidence, and plat showed location of 36 acres within larger 116 acre tract and contained calls for course and distance of 36 acres); *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150,

152 (1945) (property description deficient when no city, county or state was mentioned and there was no lot or block number and no indication of amount of land).

■ The purpose of a description in a written conveyance is not to identify the land, but to afford a means of identification. *Jones,* 614 S.W.2d at 99–100. "A writing need not contain a metes and bounds property description to be enforceable." *Texas Builders v. Keller,* 928 S.W.2d 479, 481 (Tex.1996). If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds. *Gates v. Asher,* 154 Tex. 538, 280 S.W.2d 247, 248–49 (1955).

■ If a conveyance of an interest in real property does not sufficiently describe the land to be conveyed, it is void and unenforceable under the statute of frauds. *See Republic Nat'l Bank of Dallas v. Stetson,* 390 S.W.2d 257, 261 (Tex.1965). Such a contract, deed, or conveyance will not support an action for specific performance or a suit for damages for a breach of contract. *Wilson,* 188 S.W.2d at 152; *Reiland v. Patrick Thomas Props., Inc.,* 213 S.W.3d 431, 437 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

Here, the contract for deed provides,

This contract between the seller, Alex Yovan and the buyer, Anna Marie Nguyen, is for the purchase of the land and house at:

15817 Hwy. 6, Santa Fe, Tx. The property description is as follows:

ABST 613 PAGE 6 LOTS 5 thru 7 HIGHWAY 6

UNRECORDED SUB

SANTA FE, TEXAS 0.384 ACRES

PARCEL # 4005–0000–0005–000

Anna Marie Nguyen, buyer, agrees to purchase this property from Alex Yovan, seller, for $37,000.00 at 10% interest for 10 years. There will be a down payment of $5,000.00. The payments of $422.88 per month will begin on May 1, 2002 and will continue on the first day of each month thereafter for one hundred twenty payments.

A late fee of $25.00 will be added to any payment that is 5 days late. If the sellers fail to make *two payments,* this contract will be considered revoked and the sellers will vacate the property.

It shall be the responsibility of the sellers to

> obtain and maintain insurance on the house [Buyers will submit a copy of the insurance.]
>
> pay property taxes when they become due [For the year 2002 the sellers will be responsible for Jan.–March or 25% of the taxes and the buyers will be responsible for April–Dec. Or 75% of the taxes. For the year 2003 and subsequent years, all taxes are the responsibility of the buyer. Tax receipt copies will be submitted on or before the first of February each year.]
>
> Failure to maintain insurance or failure to pay taxes as they become due will revoke this contract and sellers will vacate the property.

This contract is solely between *Anna Marie Nguyen* and *Alex Yovan* and cannot be transferred in any way to any other parties. There is no penalty for paying this contract off early.

Here, the contract contains a complete street address, 15817 Hwy. 6, Santa Fe, Tx. *See Apex Financial Corp. v. Garza,* 155 S.W.3d 230, 237 (Tex.App.-Dallas 2004, pet. denied) ("We have held that a street address or a commonly-known name for property may be sufficient property description if there is no confusion."). Neither party argues that there has been any confusion about the exact property that was conveyed by any of the deeds. In addition, the contract refers to another existing writing which has the means to identify the land with particular certainty. Specifically, the contract describes the land conveyed as the same land described in abstract 613, page 6, lots 5 through 7, Highway 6, unrecorded subdivision, Santa Fe, TX, 0.384 acres, parcel 4005–0000–0005–000.

Finally, Dale Hardy, the Yovan's expert and a professional land surveyor, looked at the 2002 and 2003 contracts[3] and agreed that they had the same property description.[4] He agreed that the address allowed him to drive to the location physically, "but it would not provide the specifics in terms of dimensions in terms of width, length, depth, bearing, things of that sort." He stated that the contract's reference to "abstract 613 page 6" is a reference to "an IGN Railroad Company survey," that would allow the location of the property in the county to be determined and that the reference to "lots 5 through 7 Highway 6, unrecorded sub" meant that the property had been divided and lot numbers assigned to it, but there was no direct link to a recorded public plat. Hardy further testified that the parcel number in the contract for deed was "a tax account number maintained by the GCAD or Galveston Central Appraisal District." Then the following exchange occurred:

---

3. The 2002 contract is the contract in the name of Nguyen's children while the 2003 contract is the contract in Nguyen's name.

4. Nguyen's counsel stipulated to Hardy's qualifications as an expert surveyor.

Q. Does GCAD maintain some type of map or plat or something like that? Do they have abstract 613 in their file?

A. Actually they do, yes, sir.

Q. And so using this partial number are you able to identify with certainty the exact property to be conveyed?

A. Using that parcel number and cross referencing back to their map you can identify a piece of property. If I may continue again, even with that information the fact that it's referring back to an unrecorded subdivision means there's no map to go verify the GCAD information against. GCAD's purpose is to identify a piece of property, a taxpayer, so they can collect taxes on it. It's not, they don't have a responsibility to precisely define the property in terms of location or in terms of dimensions. They will be generally accurate but certainly not definitive.

█ Hardy agreed that he could use the tax records to identify the property so that taxes could be collected on it, and he testified that the contract for deed referenced an IGN Railroad Company survey that had been divided into numbered lots with an address to which he could drive. Although Hardy testified that the description of the property would not be exact, a contract for deed need only have the "means or data by which the land to be conveyed may be identified with reasonable certainty." *See Morrow v. Shotwell*, 477 S.W.2d 538 539 (Tex.1972). The law

does not require a metes and bounds description or a plat in a recorded subdivision in order for land to be conveyed by a contract for deed. *See Keller*, 928 S.W.2d at 481.

Here, the contract for deed provides the size of the property, an address, a lot number in an unrecorded subdivision, an abstract number referencing a railroad survey map of the unrecorded subdivision locating it in the county, and a tax identification number for the parcel conveyed coordinated with the map. The parties were able to drive to the house and lot and there was no confusion as to the property conveyed by the contract for deed. We conclude that the evidence presented meets the standard of reasonable certainty. Accordingly, we hold that the contract satisfies the statute of frauds as a matter of law.

We sustain Nguyen's first issue.

### Property Code Violations

█ In her second issue, Nguyen argues that the evidence is legally and factually insufficient to support the trial court's findings regarding statutory violations of the Texas Property Code. Specifically, Nguyen contends that the Yovans violated sections 5.063, 5.064, and 5.077 of the Texas Property Code.[5] Violations of these sections of the Texas Property Code entitle a consumer to damages under the DTPA.

### A. Standard of Review

█ In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a

---

5. In her appellate brief, Nguyen also argues that the Yovans violated sections 5.066, 5.069, 5.084, and 5.085 of the Texas Property Code. However, we do not consider Nguyen's arguments on these grounds because they were not raised in her pleadings in the trial court, nor were they tried by consent. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993) ("As a rule, a claim ... must have been asserted in the trial court in order to be raised on appeal."); *see also* TEX R. CIV. P. 301 (judgment shall conform to the pleadings).

jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). When challenged, a trial court's findings of fact are not conclusive if, as in the present case, there is a complete reporter's record. *In re K.R.P.*, 80 S.W.3d at 673; *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

 "When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989)). In reviewing the legal sufficiency of the trial court's finding, we must "examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* If there is no evidence supporting the finding of the trial court, then we must "examine the entire record to determine if the contrary proposition is established as a matter of law." *Id.* We will sustain the legal sufficiency challenge "only if the contrary proposition is conclusively established." *Id.*(citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)).

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. We must "consider and weigh all of the evidence," and we "can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

The trial court held that "Alex Yovan and Philip Yovan were not required to abide by the provisions of Section 5.061, et seq. of the Texas Property Code. If they were required to abide by such provisions, they made a good faith effort to abide by them." The trial court also held that Nguyen was "not entitled to recover the 'liquidated damages' set out in the Texas Property Code." In support of its holding, the trial court found that Alex and Philip had in good faith furnished Nguyen the information required by statute and that Nguyen had suffered no damage by Alex's and Philip's failure to provide her with annual accountings each year.

## B. Applicability of the Texas Property Code

Nguyen argues that the sections of the Texas Property Code cited above apply to her dealings with the Yovans. Section 5.062 provides,

(a) This subchapter applies only to a transaction involving an executory contract for conveyance of real property used or to be used as the purchaser's residence or as the residence of a person related to the purchaser within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code. For purposes of this subchapter, and only for the purposes of this subchapter:

(1) a lot measuring one acre or less is presumed to be residential property;

TEX. PROP.CODE ANN. § 5.062 (Vernon Supp. 2008).

The undisputed evidence shows that the parties entered into an executory contract, or contract for deed, and that the property initially served as the residence for Ngu-

yen's daughter and later Nguyen. Moreover, the contract describes the property as less than one acre, so that the property is presumed to be residential property. *See id.* § 5.062(a)(1). On appeal, the appellees do not provide any argument or evidence in support of the trial court's conclusion that the appellees did not need to comply with the statutory sections. We hold that the trial court erred in concluding that Chapter 5 of the Texas Property Code does not apply.

## C. Section 5.077

■ The trial court found, "Alex Yovan and Philip Yovan in good faith furnished Anna Marie Nguyen with the information required by statute," and, "Anna Marie Nguyen suffered no damage by Alex Yovan or Philip Yovan's failure to provide her with 'annual accountings' each year." Nguyen challenges the legal and factual sufficiency of these findings, arguing that the Yovans failed to comply with section 5.077 of the Texas Property Code. *See* TEX. PROP.CODE ANN. § 5.077 (Vernon Supp. 2008).

Section 5.077 provides that "the seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract." *Id.* § 5.077(a). The accounting statement must include:

(1) the amount paid under the contract;

(2) the remaining amount owed under the contract;

(3) the number of payments remaining under the contract;

(4) the amounts paid to taxing authorities on the purchaser's behalf if collected by the seller;

(5) the amounts paid to insure the property on the purchaser's behalf if collected by the seller;

(6) if the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and

(7) if the seller has changed insurance coverage, a legible copy of the current policy, binder, or other evidence that satisfies the requirements of section 5.070(a)(2).

*Id.* § 5.077(b)(1)-(7). A seller who conducts less than two transactions in a 12–month period under section 5.077 and who fails to comply with subsection (a) is liable to the purchaser for "(1) liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required by Subsection (a); and (2) reasonable attorney's fees." *Id.* § 5.077(c)(1)-(2). A seller who conducts two or more transactions in a 12–month period and who fails to comply with Subsection (a) is liable to the purchaser for "(1) liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and (2) reasonable attorney's fees." *Id.* § 5.077(d)(1)-(2).

■ To succeed on her legal-sufficiency challenge, Nguyen had to establish, as a matter of law, all vital facts in support of this issue. *See Francis,* 46 S.W.3d at 241. The evidence shows that the Yovans did not give annual statements to Nguyen with the required information. On appeal, the Yovans do not cite to any evidence that they complied with this statutory section in good faith. The Yovans do argue that Nguyen did not "meet her evidentiary burden in establishing Alex Yovan and Phillip Yovan's actions were the proximate or producing cause of damages to her." However, this section of the Property Code does not require a purchaser to prove actual harm or injury to recover statutory dam-

ages. *See Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 434 (Tex.2005) (characterizing liquidated damages of section 5.077 as penalty that does not require proof of actual harm for recovery and stating that "to conclude that actual damages are a predicate to recovery under [section 5.077] would belie our conclusion that the liquidated damages provision is, in fact, punitive rather than compensatory"). We have not been directed to any evidence showing that the Yovans complied with section 5.077 in good faith. Accordingly, we conclude that Nguyen has demonstrated, as a matter of law, that the Yovans failed to comply with section 5.077.[6]

We sustain Nguyen's second issue on appeal as it relates to section 5.077.

### D. Sections 5.063 and 5.064

▪ Also in her second issue, Nguyen argues that the Yovans violated sections 5.063 and 5.064 of the Texas Property Code.

Section 5.064, entitled "Seller's Remedies on Default," provides,

A seller may enforce the remedy of rescission or of forfeiture and acceleration against a purchaser in default under an executory contract for conveyance of real property only if:

(1) the seller notifies the purchaser of:

(A) the seller's intent to enforce a remedy under this section; and

(B) the purchaser's right to cure the default within the 30–day period described by Section 5.065;

(2) the purchaser fails to cure the default within the 30–day period described by Section 5.065; and

(3) Section 5.066 does not apply.[7]

Tex. Prop.Code Ann. § 5.064 (Vernon 2004).

Section 5.063, entitled "Notice," provides,

(a) Notice under Section 5.064 must be in writing and must be delivered by registered or certified mail, return receipt requested. The notice must be conspicuous and printed in 14–point boldface type or 14–point uppercase typewritten letters, and must include on a separate page the statement:

YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT TO BUY YOUR PROPERTY. UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE BY (date) THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR PROPERTY.

NOTICE

(b) The notice must also:

---

6. When a seller fails to comply with subsection 5.077(a), he is liable to the purchaser for liquidated damages. *See* Tex. Prop Code Ann. § 5.077(c)-(d). While the record demonstrates that the Yovans failed to comply with section 5.077(a), it does not provide the information necessary to determine the number of transactions the Yovans conduct in a 12–month period. Therefore, we cannot determine which measure of liquidated damages applies to this case.

7. Section 5.066 provides that, for a purchaser who has defaulted after paying 40 percent or more of the amount due or the equivalent of 48 monthly payments, the seller has the power to sell the purchaser's interest, but may not enforce the remedy of rescission or of forfeiture and acceleration. *See* Tex. Prop.Code Ann. § 5.066 (Vernon 2004). At a trustee's sale, the seller will convey fee simple title to the new purchaser. *Id.* If the proceeds from the sale exceed the debt under the executory contract, the seller will disburse the excess funds to the purchaser who defaulted on the executory contract. If the proceeds are insufficient, the seller may recover the resulting deficiency under other sections of the Property Code. *Id.*

(1) identify and explain the remedy the seller intends to enforce;

(2) if the purchaser has failed to make a timely payment, specify:

(A) the delinquent amount, itemized into principal and interest;

(B) any additional charges claimed, such as late charges or attorney's fees; and

(C) the period to which the delinquency and additional charges relate; and

(3) if the purchaser has failed to comply with a term of the contract, identify the term violated and the action required to cure the violation.

(c) Notice by mail is given when it is mailed to the purchaser's residence or place of business. The affidavit of a person knowledgeable of the facts to the effect that notice was given is prima facie evidence of notice in an action involving a subsequent bona fide purchaser for value if the purchaser is not in possession of the real property and if the stated time to avoid the forfeiture has expired. A bona fide subsequent purchaser for value who relies upon the affidavit under this subsection shall take title free and clear of the contract.

TEX. PROP.CODE ANN. § 5.063 (Vernon 2004).

The Yovans testified that they did not send a letter in compliance with these two statutory sections. We have not been directed to any evidence that the Yovans attempted in good faith to comply with sections 5.063 and 5.064. Accordingly, we conclude that there is no evidence to support the trial court's findings that Alex and Philip Yovan "made a good faith effort to abide by" sections 5.063 and 5.064 and that "Philip Yovan gave proper notice to Anna Marie Nguyen of the termination of the agreements."

We sustain Nguyen's second issue as it relates to sections 5.063 and 5.064.

The trial court's findings of fact and conclusions of law demonstrate that the trial court applied erroneous theories of law, and the expressed findings made by the trial court do not provide the information we need to provide Nguyen with the relief that she requested—a declaration of her rights under the contract and the damages to which she is entitled under section 5.077 of the Texas Property Code.

When the trial court has made findings of fact and conclusions of law relevant to an erroneous interpretation of law, but did not make findings that would control the case under a correct legal interpretation, we reverse and remand the case for further proceedings. *See* TEX.R.APP. P. 43.3 ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when ... a remand is necessary for further proceedings [or] the interests of justice require a remand for another trial."); *Jones v. Smith,* 291 S.W.3d 549, 553–55 (Tex.App.-Houston [14th Dist.] 2009, no pet.).

### Conclusion

In sum, we hold that the contract for deed did not violate the statute of frauds and that the Yovans did not make a good faith effort to abide by statutory sections 5.063, 5.064, and 5.077 of the Texas Property Code. Therefore, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.