**Opinion issued June 20, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00047-CV

————————————

## MOODY NATIONAL BUFFALO SPEEDWAY MT, L.P., Appellant

## V.

## SIRIUS SOLUTIONS, LLLP, Appellee

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2009-38998

## MEMORANDUM OPINION

Moody National Buffalo Speedway MT, L.P., the landlord in this dispute,

appeals a judgment ordering that it take nothing on its claims for breach of a lease

and awarding Sirius Solutions, LLLP, the tenant, actual damages of $56,278.11 on

its counterclaim for breach of the same lease, plus attorney's fees, pre- and post-judgment interest, and costs.

Hurricane Ike damaged the leased premises during the last year of the parties' multi-year lease. Within days, Sirius moved to a temporary office space, and the parties agreed that Sirius's duty to pay rent for the damaged office space was abated. This dispute is about whether Moody's subsequent repair of the damage caused by Hurricane Ike triggered Sirius's obligation to resume paying rent for the remainder of the lease's term.

Sirius refused to pay, the lease terminated, and Moody withheld Sirius's deposits and other advance payments and sued for the balance it claimed was due. Sirius countersued for the return of its deposits and other advance payments. After a bench trial, the trial court rendered a take nothing judgment on Moody's claims and awarded Sirius $56,278.11 in actual damages, $135,000 in attorney's fees and costs, conditional attorney's fees on appeal, and interest. On appeal, Moody asserts the trial court's findings of fact are legally erroneous and legally and factually insufficient to support its conclusions of law.

We affirm.

## Background

Sirius is a business consulting firm. It leased office space from Moody in an eleven-story building at 3700 Buffalo Speedway in Houston. Sirius leased the

2

entire eleventh floor, most of the tenth floor, and a small space on the third floor. The parties' multi-year lease was to expire on July 31, 2009. Before Hurricane Ike struck in September 2008, the parties were already negotiating a possible extension of the lease. But Sirius was also exploring the possibility of relocating after the lease expired.

Hurricane Ike struck on September 13, 2008. It damaged the roof of 3700 Buffalo Speedway, rendering Sirius's office space uninhabitable. Sirius was able to quickly lease temporary space in a building owned by a Moody affiliate. The parties agreed that, under the terms of the lease, Sirius's obligation to pay rent for the damaged office space was abated to the extent the making of the repairs interfered with Sirius's business. However, they ultimately sued one another over whether and when Moody's repair of the space triggered Sirius's obligation to *resume* paying rent for the remainder of the lease's term.

The lease expressly addressed the parties' obligations in the event of a partial destruction of the building. Under section 20.1, Moody was obligated to repair a partial destruction "within 60 days from receipt of [insurance proceeds]" or, if the repairs could not be made within 60 days, Moody, at its option, could make the repairs "within a reasonable time." The lease expressly provided that a partial destruction of the building would not terminate the lease; however, it would entitle Sirius to a "proportionate reduction of rent while such repairs are being

3

made, based upon the extent to which the making of such repairs shall interfere with the business of [Sirius] on the Premises."

Moody and Sirius presented sharply contrasting accounts of what happened after Ike. Stephen Woods, the vice president of Moody's commercial office division, stated that the repairs to Sirius's leased space were completed by April 1, 2009, and that, as of that date, Sirius was both free to move back into the space and obligated to pay rent for the last four months of the lease's term. According to Moody, when Sirius refused to pay, Moody was justified in retaining Sirius's deposits and advance payments and in bringing suit for the balance of the unpaid rent and late charges.

To support this contention, Moody's construction expert relied on certificates of substantial completion dated March 27 and April 1, within eight weeks of the date construction began. He also testified that the eight weeks it took to rebuild Sirius's space was "reasonable and normal" and, considering the circumstances in Houston at the time, "probably better than normal[,] honestly."

While Moody acknowledged that tenants other than Sirius had their spaces rebuilt earlier, Woods attributed the delay in repairing Sirius's space to Sirius. Woods testified that Sirius informed Moody by email that "[t]he optimal rebuild for Sirius Solutions would include modifications from their former conditions" and that rebuilding to the pre-Ike condition "would likely prompt a move next summer

4

when [Sirius's] lease expires." Woods testified that, based on these communications, he understood that Sirius did not want its space rebuilt to the exact configuration that existed before Ike. But, according to Woods, Sirius would not communicate its wishes to Moody to allow Moody to complete the repairs to Sirius's satisfaction. Woods stated that Moody finally decided to move forward with the repairs without Sirius's input. Due to Sirius's delay, Moody was not able to meet its anticipated goal of substantial completion by February 1, 2009. Instead, it was February 3, 2009 before the construction permits for Sirius's space were issued.

Sirius painted a different picture. Its CEO, Kristi Chickering, testified that no one from Moody ever asked for Sirius's input in the rebuilding process. She said Woods told her that Moody would rebuild the space to its pre-Ike configuration, adding that use of the same layout would speed up the process because it would eliminate the need for building permits. Chickering's testimony in this regard was consistent with a November 21 email from Woods: "Today I gave the contractor permission to start build back of the 10th and 11th floors to the same specifications that they were prior to Hurricane Ike."

Chickering also testified that Moody did not notify Sirius in advance that the space was repaired and ready for move-in on April 1. Instead, according to Chickering, Sirius's first notice that the space was ready came in form of a late rent

5

payment notice dated April 14. Chickering and another Sirius employee visited 3700 Buffalo Speedway shortly after receiving that notice. Chickering testified that, during that April visit, Sirius's space was designated a hard-hat area and construction workers were still active on the tenth and eleventh floors. She also said wires and cables were hanging from the ceiling, and a dumpster was collecting leaking water. Chickering stated the space was not ready for Sirius to return and that Sirius could not use the space to conduct its business at that time. Documentary evidence supports Chickering's testimony: the Certificates of Occupancy for various portions of Sirius's space, without which a tenant is prohibited from occupying a space, were not issued until May 15, May 20, and June 23, 2009.

Chickering also testified that Moody rebuilt Sirius's space in a manner that made it unacceptable to Sirius. Sirius is a consulting firm. Its employees require private offices in which they can conduct confidential meetings. Sirius also requires conference rooms to accommodate larger meetings and reception areas for client visits, which are frequent. Chickering testified that Sirius conducts litigation consulting services and, in order for its employees to render proper expert witness services, Sirius needs to be able to keep certain documents on a secure server, separate from other documents. Thus, Sirius needed two server rooms.

It is undisputed that Moody did not rebuild Sirius's space to its pre-Ike configuration. Moody reduced the number of rooms on the eleventh floor from fifty to thirty-eight and on the tenth from fourteen to seven. The reception area on the eleventh floor was removed, as was a training room. Sirius had two server rooms before Ike; after the repairs, it had only one. For the most part, Moody sought to justify these changes as a middle ground between returning the space to its pre-Ike condition and incorporating the draft plans it received from Sirius in November. However, Woods testified that the removal of the reception area was a mistake: Moody "literally forgot to design the reception space back into the 11th Floor." Similarly, with respect to the reduction in the number of server rooms from two to one, Woods testified that he did not know there were two; he thought there was only one.

The trial court entered findings of fact and conclusions of law. Its findings state that Moody did not "return the Leased Premises to the same specification as prior to the destruction" and that Moody's failure to do so impaired "Sirius's ability to run its business in the Leased Premises." The trial court accordingly concluded that Sirius did not breach the lease by failing to pay rent during the last four months of the term of the lease, and, instead, Moody breached the lease by failing to return $56,278.11 in deposits and other payments. It entered judgment

7

that Moody take nothing on its claim for unpaid rent and awarded Sirius the return of its deposit and other advance payments, plus attorney's fees, interest, and costs.

## Discussion

Moody contends the trial court erred in rendering judgment for Sirius and against Moody because the trial court's "findings of fact are legally erroneous and legally and factually insufficient to support its conclusions of law."

### A. Standard of Review

In an appeal from a bench trial, we review a trial court's conclusions of law de novo. *Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). We will uphold the conclusions on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* at 314–15. A trial court's conclusions of law may not be challenged for factual sufficiency of the evidence, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.* at 314.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269–70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining whether

8

sufficient evidence exists to support an answer to a jury question. *Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 270.

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

In reviewing a factual sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 312 (Tex. App.— Houston [1st Dist.] 2011, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The trial court, as finder of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Salomon v. Lesay*, 369

9

S.W.3d 540, 549 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The fact finder may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Id.*

**B.** **Sirius's Duty to Pay Rent was Abated While Repairs Interfered with its Business**

Moody contends the Lease did not require Moody to restore Sirius's space to its pre-Ike configuration, and, therefore, the trial court erred in concluding that Moody's failure to do so constitutes a breach of the lease. Sirius responds that the trial court properly rejected Moody's contract claim because the lease did not require Sirius to pay rent for a space it could not use. We agree with Sirius.

Section 20.1 of the lease provided that Sirius "shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of [Sirius] on the Premises."[1] The parties advance different definitions of the term

---

[1] In its entirety, section 20.1 provides:

10

"repair" and disagree about whether the use of the term obligated Moody to restore the space to its exact pre-Ike specifications. We need not address these competing definitions, however, because the plain language of the lease makes clear that the parties agreed that Sirius had no obligation to pay rent while the repairs were being made, to the extent the repairs prevented Sirius from using the space to operate its business. Put differently, Sirius's obligation to resume paying rent would begin only when the making of the repairs no longer interfered with its business on the premises.

The trial court made several relevant findings of fact. The trial court found that "Moody significantly and materially altered the specifications of the Leased Premises" and "failed to return the Leased Premises to the same specification." It is undisputed that Moody altered Sirius's space by, among other things, decreasing

---

20.1. <u>Partial Destruction</u>: In the event of a partial destruction of the Premises during the term hereof, from any cause covered by insurance, Landlord must repair the same to the extent insurance proceeds are received by Landlord for such repairs, and within 60 days from receipt of such proceeds under then existing governmental laws and regulations. Such partial destruction shall not terminate this Lease and Tenant shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Tenant on the Premises. If such repairs cannot be made within said 60 day period, Landlord, at its option, may make the repairs within a reasonable time. If Landlord elects to make said repairs, this Lease will continue in effect and the rent will be proportionately abated as stated above. If the repairs cannot be made within 60 days from receipt of insurance proceeds by Landlord, and Landlord elects not to make said repairs, this Lease may be terminated at the option of either party.

11

the amount of floor space, eliminating the reception area, reducing the number and size of offices, and giving a small portion of the space to another tenant without Sirius's consent, knowledge, or approval. Viewed in the light most favorable to the verdict, the evidence supports the trial court's finding concerning alteration of Sirius's space. *See City of Keller*, 168 S.W.3d at 822. And, although Moody disputes the *reason* it altered the Sirius's space, it does not dispute the *fact* of alteration. Because the evidence is undisputed, the trial court's finding is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176; *Pitts & Collard, L.L.P.*, 369 S.W.3d at 312. We therefore conclude that the evidence is legally and factually sufficient to support this finding.

The trial court also found that the space, as repaired by Moody, was "unusable" by Sirius. Chickering testified that Sirius required numerous private offices, conference rooms, and a separate, secure server room to carry out its normal business. She also testified that the changes Moody made to the space rendered it unusable for Sirius's business. Chickering's testimony was undisputed. This undisputed evidence supports the trial court's finding that Sirius's space was not usable; thus, the finding is not against the overwhelming weight of the evidence. *See City of Keller*, 168 S.W.3d at 822; *Pitts & Collard, L.L.P.*, 369

12

S.W.3d at 312. Therefore, we conclude that legally and factually sufficient evidence supports this finding.

The parties agree that Sirius's duty to pay rent was abated while repairs of its space interfered with its ability to conduct its business. The findings above show that Sirius was unable to conduct its business—or that, in terms of the lease, the repairs interfered with Sirius's ability to conduct its business—throughout the remainder of the lease's term. It therefore follows that Sirius's obligation to pay rent remained abated for the remainder of the lease's term. Because it had no contractual obligation to pay rent, Sirius did not breach the lease by failing to pay rent. *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("A breach occurs when a party fails or refuses to do something he has promised to do."); *see also Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 221 (Tex. App.—Tyler 2003, no pet.) ("It should go without saying that a breach [of contract] is determined by comparing the terms of a contract with the actions of the alleged breaching party."). The trial court reached this same conclusion, stating, "Sirius did not breach the Lease Agreement."

In conclusion, viewed in the light most favorable to the judgment, the evidence supports the trial court's findings that Moody failed to provide a space that Sirius could use to operate its business. Therefore, the lease, which obligated Sirius to pay rent only to the extent such repairs did not interfere with the business

13

of Sirius, did not require Sirius to resume paying rent. Accordingly, we hold that the trial court did not err by concluding that Sirius did not breach the lease by failing to pay the rent Moody claimed was due beginning in April 2009.

## C.      Moody Breached by Withholding Advance Payments

Moody also challenges the trial court's conclusion that Moody breached the lease by withholding advanced payments made by Sirius. Moody's argument is premised on Sirius having breached the lease by failing to pay rent for the months of April through July of 2009. We have concluded that the evidence supports the trial court's findings and conclusions that Sirius was not obligated to resume paying rent during this period and, therefore, did not breach the lease. Because we have rejected the premise for Moody's argument, we overrule this argument.

## D.      Moody's Other Arguments for Reversal

Moody raises a number of other challenges to the trial court's judgment. Moody challenges the trial court's findings and conclusions that Moody: (1) did not timely repair the space, (2) repudiated the Lease, and (3) caused the consideration to fail. Each of these is an alternative basis to support the trial court's judgment. Because we determine the trial court properly concluded Sirius did not breach the lease by failing to pay rent and Moody did breach by failing to return Sirius's advance payments, the trial court's judgment can be upheld on that basis. Accordingly, we need not address these issues. *See Ginther v. Taub*, 675

14

S.W.2d 724, 725 (Tex. 1984) (declining to address other issues after deciding independent ground existed for supporting judgment); *Reinhardt v. Walker*, No. 14-07-00304-CV, 2008 WL 2390482, at *5 (Tex. App.—Houston [14th Dist.] June 12, 2008, pet. denied) (mem. op.) (declining to address challenges to trial court's findings providing alternative basis for judgment); *Satterfield v. Vess*, No. 2-04-287-CV, 2005 WL 1838978, at *2 (Tex. App.—Fort Worth Aug. 4, 2005, no pet.) (mem. op.) (declining to address challenge to one of trial court's conclusions of law after overruling challenges to other conclusions that independently supported judgment); *cf., e.g.*, *Humane Soc'y of Dallas v. The Dallas Morning News L.P.*, 180 S.W.3d 921, 923 (Tex. App.—Dallas 2005, no pet.) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)) (explaining that where trial court does not specify basis for summary judgment, appellant must show each independent ground for judgment is insufficient in order to prevail on appeal).

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

15